IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANGELA COOK                                                                    PLAINTIFF

V.                                                         CAUSE NO.: 3:22-CV-643-DPJ-FKB

HINDS COUNTY BOARD OF SUPERVISORS;
HINDS COUNTY;
THE HONORABLE CARLYN HICKS
In her individual and official capacities
AND JOHN AND JANE DOES 1-9                                                    DEFENDANTS

## DEFENDANT CARLYN HICKS'MOTION TO DISMISS

COMES NOW Defendant, The Honorable Carlyn Hicks (Hereinafter "Defendant") by and through undersigned counsel (to the extent that a governmental employee may be capable of being sued while acting within the course and scope of employment), asserting all defenses pursuant to the Mississippi Rules of Civil Procedure 12(b)(1-7) and Federal R. Civ.P.12(b)(1)-(7), and file this Motion to Dismiss, which Defendant would like to set the hearing on this matter as soon as Counsel can be heard and in support thereof, would state the following:

## FACTS AND ALLEGATIONS OF THE COMPLAINT

The facts of this matter are simple and straight forward although Plaintiff's Complaint alleges several broad causes of action. Primarily, Plaintiff's Complaint brings a cause of action under Title VII and 42 U.S.C § 1981 through 42 U.S.C § 1983 for racially based discriminatory treatment. Plaintiff also alleges claims of racially based discriminatory treatment arising under the equal protection clause and due process clause of the 14th Amendment through 42 U.S.C § 1983, and a breach of contract claim.

Plaintiff alleges that she had been employed as County Court Administrator by the Hinds County Board of Supervisors since June 2004. In July 2020, Defendant took office and assumed

her role as Judge and the duties associated with the position. Upon taking office Defendant required every employee to submit an updating resume for her evaluation. This was done for the purpose of confirming that everyone was properly qualified for their position and operating effectively in their proper capacity. Defendant discovered that many employees held specific job titles but were not operating in the capacity and function of their job titles. For example, Defendant met with employee Linda Arman, who had been functioning as County Court Administrator for an unknown amount of time although she was never rightfully employed in that capacity. Defendant removed Linda Arman from the role and function of Court Administrator and asked her to resume her role as Intake Coordinator. Linda Arman's proper job title was Intake Coordinator, therefore Defendant requested that she perform only the functions and roles of Intake Coordinator and at the proper salary of that position. Following this adjustment, Linda Arman failed to perform her duties as Intake Coordinator, was found improperly removing and destroying court documents and was subsequently terminated.

In or around August 2020, Plaintiff was asked to perform the proper functions of the Court Administrator position, making Plaintiff Court Administrator in name and function. Plaintiff did not properly perform the duties of Court Administrator. Plaintiff was constantly late for work, meaning other employees would have to fill the role of Court Administrator frequently and without prior preparation or knowledge. Likewise, Plaintiff, along with several others, frequently dressed in attire not fitting for a professional work environment. Although this issue was addressed verbally on several occasions, Defendant found it necessary to implement a dress code for all employees, including Defendant. Plaintiff took offense to the implementation of the dress code and refused to participate although it was a requirement for each and every employee. Defendant took appropriate steps to create a work environment where everyone performed and dressed

professionally in order to create an environment that could produce the best work product for the Hinds County population being served.

Corey Gerber was hired as Staff Attorney to fill certain important functions of the court that were found to be lacking. Early in his time as Staff Attorney, Corey uncovered a large mass of unopened letters and motions that had been submitted by attorneys in dozens of prior and ongoing matters. The handling and care of these letters and motions were the responsibility of Plaintiff in her role as Court Administrator. It is vital to the performance of the court that each document submitted be property handled and addressed in a timely manner. Plaintiff manifestly neglected her role and function of Court Administrator by failing to properly handle dozens of documents from dozens of cases assigned to Defendant. Immediately following discovery of the unopened documents, Defendant convened a staff meeting where she specifically addressed the severe issues mishandled documents presented and requested more information from Plaintiff regarding her neglect of the documents. In addition to neglecting letters and motions submitted to the court, Plaintiff failed to properly file orders and related documents signed by Defendant in dozens of matters she presided over. When confronted with her neglect of these documents Plaintiff lied about her actions.

Moving forward Defendant began to ask another employee to accept some of the functions of Court Administrator. Initially this employee would perform the functions regarding the proper handling of documents, but over time the role grew as Plaintiff's neglect began to grow and/or be uncovered. Eventually, this employee, who had been Deputy Court Administrator was asked to fully absorb the duties of Court Administrator while Plaintiff would maintain the function of Deputy Court Administrator. Each employee was compensated accordingly. Plaintiff's primary role as Court Administrator and Deputy Court Administrator was to maintain files and documents

until they could be transferred to the Court Clerk. Plaintiff failed to do these roles properly on several known occasions and was given several opportunities to rectify her actions. Plaintiff not only failed in each role but utilized the roles to commit fraudulent acts. Plaintiff was found fraudulently enlarging the value of purchase orders that had previously been signed by Defendant in her official capacity. It is unknown how long Plaintiff was doing this or where the additional funds went. Following Plaintiff's termination, the role of Deputy Court Clerk was earned by a young lady having the relevant experience, a bachelor's degree in relevant studies, and professional work ethic. At all relevant times, Defendant acted in her official capacity to maintain the State's compelling state interest in providing a timely, proficient, and just legal system for its citizens. Plaintiff's actions as Court Administrator and Deputy Court Administrator greatly deteriorated Defendant's and this State's ability to properly hear and maintain dozens of court matters.

## **THE MISSISSIPPI TORT CLAIMS ACT IS THE EXCLUSIVE REMEDY FOR ALL CLAIMS FOR MONEY DAMAGES**

10. The Mississippi Tort Claims Act, (MTCA) provides the exclusive civil remedy against a government entity or its employees for acts or omissions which give rise to a suit. Miss. Code Ann. §11-46-7(1); *City of Jackson v. Sutton*, 797 So.2d 977, 980 (Miss., 2001).

11. The "exclusive remedy" provision of the Mississippi Tort Claims Act found at ' 11-46-7(1) states in pertinent part:

> (1) The remedy provided by this chapter against a governmental entity, or its employee is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee . . . for the act or omission which gave rise to the claim or suit; ...

*Miss. Code Ann. ' 11-46-7(1).* Accordingly, all claims must be considered within the MTCA limitations and immunities.

## THE MTCA PROVIDES SPECIFIC IMMUNITIES
## WHICH MUST BE APPLIED IN THIS CASE

12. Plaintiffs' asserted claims are subject to and barred by the Mississippi Tort Claims Act, as codified at Miss. Code Ann. ' 11-46-1, *et seq*.

13. Miss. Code Ann. §11-46-9 provides that a governmental entity and its employees acting within the course and scope of their employment shall not be liable for any claim based upon an act or omission enumerated therein. If the acts or omissions fall under any of the enumerated subsections of 11-46-9, then the governmental entity is exempt from liability. *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So.2d 1234, 1236 (Miss. 1999).

14. Plaintiff's claims and cause of actions against the Defendant is barred by the substantive provisions of the Tort Claims Act, codified at Miss. Code Ann. ' 11-46-1 *et seq.*, pursuant to the exemptions to the waiver of sovereign immunity set forth in Miss. Code Ann. ' 11-46-9(1) (a)(b)(d) and (h). In the event that even one of the immunity provisions is applicable, then Defendant is entitled to immunity for the entire case. *Pearl River Valley Water Supply Dist. v. Bridges* 878 So.2d 67 (April, 2004).

## DEFENDANT IS ENTITLED TO IMMUNITY
## UNDER SECTION 11-46-9(1)(d) OF THE MISSISSIPPI TORT CLAIMS ACT

15. The MTCA at '11-46-9(1)(d) exempts governmental entities from liability in actions that are based upon the exercise of a discretionary function, or a duty on the part of a governmental entity or employee, whether or not the discretion be abused. It states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> ...
> (d) based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

*Miss. Code Ann. § 11-46-9 (1)(d).*

16. Mississippi Supreme Court in *Collins v. Tallahachie County*, clarified the nature of this discretionary function immunity, (876 So.2d 284 (Miss., 2004), stating:

> When an official is required to use his own judgment or discretion in performing a duty, that duty is discretionary. *Harris*, 867 So.2d at 191. Miss. Code Ann. §11-46-9(1)(d) exempts governmental entities from liability of a discretionary function or duty "whether or not the discretion be abused." Therefore, ordinary care standard is not applicable to Miss. Code Ann. §11-46-9(1)(d).

17. This case is ripe for dismissal based on sovereign immunity and discretionary function immunity. With its holding in <u>Wilcher v. Lincoln County Board of Supervisors and The City of Brookhaven, Mississippi</u> 243 So. 3d 177(Miss. 2020); the Mississippi Supreme Court abandoned and overruled the <u>Brantley</u> line of cases and returned to the original course of applying the widely recognized easily understood, public-policy two- part test to determine whether a governmental entity and/or employee is entitled to immunity based on discretionary function immunity.

18. The Facts of Wilcher are simple. The County and City were repairing and/or constructing a bridge and left a hole/pit uncovered with no warning signs, flag persons, lights or any other devises that would warn citizens the bridge or roadway was missing, closed, or under repair or construction. *Id.* Wilcher's vehicle crashed into the hole injuring Wilcher; his wife; and damaging his vehicle. *Id.* Wilcher sued the County Board of Supervisors and the City of Brookhaven for negligence. *Id.* Both Defendants filed Motions to Dismiss insisting the claims were barred by the MTCA. *Id.* The trial Court agreed and granted both Motions. *Id.* Plaintiff appealed the ruling and the Mississippi Supreme Court reversed and remanded the case back to the trial Court. *Id.*

19. The Court reaffirmed discretionary function immunity which centers immunity on the "governmental entity and its employees acting within the course and scope of their employment

or duties shall not be liable for any claim... *(d)* Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused. Miss. Code Ann § 11-46-9 (1)(d). The Mississippi Supreme Court further held; the purpose of discretionary-function immunity is not to protect all decisions by governmental employees involving some level of discretion but instead only those functions that by their nature are policy decisions. As such, the Court brought back the public policy test which has two parts to determine if governmental conduct is discretionary so as to afford the governmental entity immunity. *Jones v. Miss Dept of Transp.* 744 So. 2d 256, 260 (Miss. 1999). The Court must first ascertain whether the activity in question involved an element of choice or Judgement. *Miss. Transp. Comm. v. Montgomery*, 80 So. 3d 789 795 (Miss. 2012). If so, the Court also must decide whether that choice or Judgment involved social, economic, or political – policy considerations. *Id.* Only when both parts of the test were met did a governmental Defendant enjoy discretionary function immunity. *Id.* The test of course, presupposes the Court has correctly identified "the activity in question" the allegedly tortious act giving rise to the claim.

20. In *Wilcher*, the Supreme Court held: because discretionary function immunity protects only governmental actions and decisions based on considerations of public policy, "When" applying the discretionary function exception, this Court must distinguish between real policy decisions implicating governmental functions and simple acts of negligence which injure innocent citizens. The Court additionally reasoned, Thus, when reviewing whether a challenged action is afforded immunity, a Court's focus is on the nature of the actions taken and whether they are <u>susceptible to policy analysis</u>. In *Wilcher*, the plaintiff alleged a simple act of negligence and not a real policy decision, caused his injury. The simple act of negligence was the County and City

employees not marking and/or warning the public/Wilcher of the dangerous condition that was created by Defendants. That is completely different from policy decisions implicated by the two-part public policy test.

21. The matter currently before the Court can be analyzed pursuant to the two-part public policy test as it does not involve a simple act of negligence. One of the duties/functions of Defendant is to make decisions that impact the residents of Hinds County. Making decisions, rulings/holdings, and maintaining the local justice system impacts the residents of Hinds County. As part of those duties, Defendant must properly maintain a staff capable of performing the duties vital to maintaining the court.

22. Defendant restructuring the employees and the duties of employees of the court is a clear policy decision. These decisions by the Defendant deal with choices and judgment which implicate social, economic, or political-policy considerations. As a result, the actions of Defendant in this matter falls squarely under discretionary function immunity. Reassigning or terminating employment is different than simple acts of negligence that injure innocent citizens. Therefore, Defendant's *Motion to Dismiss* should be granted as her actions in terminating an employee participating in fraudulent acts and hindering the due process of law should be deemed a policy decision that implicates the two-part public policy test.

## **PLAINTIFF CAN NOT ESTABLISH A PRIMA FACIE CASE OF RACIAL DISCRIMINATION IN EMPLOYMENT**

To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees

who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City Southern Ry. Co.* 574 F.3d 253, 255 (2009). Once an employee has made out a prima facie case, an inference of intentional discrimination is raised and the burden of production shifts to the employer, who must offer an alternative non-discriminatory explanation for the adverse employment action. *Id.* If the employer can provide a legitimate nondiscriminatory explanation, the inference of discrimination drops out and the burden shifts back to the employee to demonstrate that the employer's explanation is merely a pretext for racial bias. *Id.* Employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. *Id* at 256. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor, or had their employment status determined by the same person, and have essentially comparable violation histories. *Id.* at 256. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. *Id.* at 256. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis. *Id.* at 256.

There is and was no individual employed under the Defendant that is or was similarly situated to Plaintiff. There is and was no individual employed under the Defendant that has or had an essentially comparable violation history to Plaintiff. Plaintiff was discovered willfully neglecting letters and motions received by the court in open and ongoing cases. There is not nor has there been any employee allowed to retain any employment position under Defendant's

supervision after mishandling documents in the manner Plaintiff did. Plaintiff was discovered mishandling final orders signed by Defendant in her official capacity. These final orders would have resolved dozens of issues and matters presided over by Defendant. There is not nor has there been any employee allowed to retain any employment position under Defendant's supervision after mishandling final orders that would have provided guidance and finality in matters plaguing the citizens of Mississippi in the manner Plaintiff did. Plaintiff was discovered using her employee duties to commit fraudulent acts. There is not nor has there been any employee allowed to retain any employment position under Defendant's supervision after committing fraudulent acts in any capacity. Plaintiff's violation history is vast and unique, matching no other employee under Defendant's supervision. Furthermore, Defendant committed several lesser violations for which she received either minor or no disciplinary actions.

Plaintiff's Complaint fails to establish a prima facie case of racial discrimination. No set of facts presented by Plaintiff can establish a prima facie case of racial discrimination in this matter. There is and has been no similarly situated individual employed under Defendant's supervision that is comparable to Plaintiff. Likewise, employees who have different work responsibilities are not similarly situated. For this reason, the racial and ethnic makeup of the entire staff is moot. Only Regina Price, who functioned as both Court Administrator and Deputy Court Administrator, and Cynthia Moore, who became Deputy Court Administrator after Plaintiff's termination, had similar work responsibilities as Plaintiff. Neither Ms. Price nor Ms. Moore has been suspected of committing fraudulent acts. Neither Ms. Price nor Ms. Moore has been discovered committing fraudulent acts. While Plaintiff's Complaint is rife with conclusory allegations of pretextual racial discrimination, facts do not support this. Race was not a factor considered by Defendant while making any relevant decision in this matter. Plaintiff's Complaint

questions Defendant's selection of individuals employed following her restructuring and subsequent termination. However, the fact remains Plaintiff is the only individual employed as Court Administrator or Deputy Court Administrator that has been suspected of or found committing fraud. Plaintiff was terminated because of her negligent and criminal acts, not her race.

In this matter, it is Plaintiff's duty to establish a prima facie case for racial discrimination. This can only be done by establishing the four elements stated above. Plaintiff has failed to identify and establish a comparator who is similarly situated to herself in her former employee functions and having a similar violation history to herself. There is no amount of discovery that can yield this individual because this individual does not exist, and no set of facts make this possible. Likewise, Cynthia Moore, who became Deputy Court Administrator following Plaintiff, has significant relevant work experience and a bachelor's degree making her qualified to accept the position. Plaintiff merely maintained an associate degree in paralegal studies and proved on several occasions she was not capable of performing the duties and functions of her employment. All adverse employment actions allegedly experienced by Plaintiff were directly related to her action or inaction. Defendant was objectively reasonable in all actions taken regarding Plaintiff as Defendant sought to provide a just and efficient legal system to the citizens of Mississippi. Plaintiff's actions directly and negatively impacted an unknown number of court proceedings across a wide span of time. Plaintiff's actions were in opposition to her functions and duties as Court Administrator and Deputy Court Administrator. Plaintiff's actions were unlike every other employee's action under the supervision of Defendant. Plaintiff has no ability to establish a case of racial discrimination under any set of facts present in this matter.

## PLAINTIFF CAN NOT ESTABLE A BREACH OF CONTRACT ON BEHALF OF DEFENDANT

Under the at-will-employment doctrine, "absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." *Southern Farm Bureau Life Insurance Company v. Thomas*, 299 So.3d 752, 753 (2020) (quoting *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603, 606 (Miss. 1993)). Plaintiff was terminated from employment because she committed fraudulent acts. Plaintiff's duties were restructured prior to termination because her actions proved to be greatly inadequate in the functions, she was tasked with performing. Plaintiff is single handedly responsible for the mishandling of dozens of court matters, documents, and filings. Defendant is and was under no legal obligation to continue to employ Plaintiff, yet she continued to attempt to accommodate Plaintiff after each misstep before Plaintiff's actions forced Plaintiff to be terminated. There is no set of facts or discovery that will support Plaintiff continuing to be employed under Mississippi law after several acts of negligence and criminal behavior prompted her termination.

## CONCLUSION

The allegations on the face of the Complaint warrant dismissal of this cause of action as a matter of law. The fact that Plaintiff can not establish a prima facie case for racial discrimination warrant dismissal with prejudice of Plaintiffs' Complaint. Plaintiffs' Complaint is also subject to immediate dismissal pursuant to the provisions of the Mississippi Tort Claim Act. Pursuant to Mississippi Rule of Civil Procedure 12(b)(6) the Plaintiff cannot establish a *prima facie* case of liability against Defendants as alleged, and dismissal is thereby appropriate.

The Mississippi legislature has determined that governmental entities and their employees shall be exempt from liability in certain situations as outlined in Miss. Code Ann. § 11-46-9. This exemption, like that of qualified or absolute immunity,

is an entitlement not to stand trial rather than a mere defense to liability and, therefore, should be resolved at the earliest possible stage of litigation.

*Meeks v. Miller*, No. 2005-Ca-00200)-COA, *citing Mitchell v. City of Greenville,* 846 So.2d 1028, 1029 (¶8)(Miss.2003). The determination of immunity is a question of law. *Meeks v. Miller*, No. 2005-Ca-00200)-COA and no amount of discovery will change this. Accordingly, Plaintiff's claims against Defendants should be dismissed by this Honorable Court without further undue delay.

**WHEREFORE, PREMISES CONSIDERED**, Defendant respectfully request this Court receives this *Motion to Dismiss*, find it is well taken and enter an Order dismissing Plaintiff's Complaint with prejudice as the Complaint fails to state a claim upon which relief can be granted.

RESPECTFULLY SUBMITTED, this the 12th day of December 2022.

HONORABLE CARLYN HICKS, Defendant

By: _____
Jamie D. Travis

OF COUNSEL:

Jamie D. Travis, MSB No.99692
Tommy E. Brown, MSB No. 106102
Gibbs Travis PLLC
210 East Capitol Street, Suite 1800
Jackson, Mississippi 39201
Telephone: (601)487-2640
Facsimile: (601)366-4295
Email: jtravis@gibbstravis.com
Email: tbrown@gibbstravis.com

## CERTIFICATE OF SERVICE

I, Jamie D. Travis, attorney for Defendant, do hereby certify that I have this day filed the foregoing document with the Clerk of the Court using the EMC system which sent notification to the following participant:

>Michael R. Brown, Esq.
>THE MICHAEL R. BROWN, LAW OFFICES, PLLC
>120 North Congress Street, Suite 710
>Jackson, Mississippi 39201

This 12th day of December 2022.

/s/ Jamie D. Travis
Jamie D. Travis