UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANGELA COOK                                                                                                PLAINTIFF

V.                                                                    CIVIL ACTION NO. 3:22-CV-643-DPJ-FKB

HINDS COUNTY BOARD OF
SUPERVISORS, ET AL.                                                                                  DEFENDANTS

ORDER

Plaintiff Angela Cook says Hinds County Court Judge Carlyn Hicks demoted and then fired her due to race. Cook therefore sued Hicks, the Hinds County Board of Supervisors, and Hinds County, Mississippi, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, and state law for alleged breach of contract. The dispute is before the Court on two motions to dismiss, one filed by Hicks [23] and the other by Hinds County and the Board of Supervisors [28]. Both motions are granted in part and denied in part.

I.      Background

As the rules require, the facts are viewed in the light most favorable to Cook. Beginning in June 2004, Cook—a white woman—worked as the Hinds County Court Administrator. Am. Compl. [21] ¶ 12. She had a spotless employment record after many years of service. *Id.* ¶ 13. That changed around July 21, 2021, when Judge Hicks—a Black woman—was appointed to the court. *Id.* ¶ 14. Hicks was Cook's supervisor, and on November 8, 2021, she demoted Cook to Deputy County Court Administrator, which reduced Cook's pay by $6,000 a year. *Id.* ¶ 17.

Hicks replaced Cook with Regina Price, who is Black. *Id.* ¶ 18. Cook had significantly more experience than Price and had trained Price in court administration. *Id.* Hicks didn't base her decision on any disciplinary issues, as Cook had none, but told Cook that she wanted to go "in a different direction." *Id.* ¶ 19.

Cook continued to work and excel in her new deputy role. *Id.* ¶ 20. But even so, on March 21, 2022, Hicks fired Cook and replaced her with a Black person. *Id.* ¶¶ 21–22. And, once again, Cook had no disciplinary issues that justified such an adverse employment action. *Id.* ¶ 22. Hicks provided "[n]o adequate reason" for the termination. *Id.* ¶ 23.

Cook sued Defendants on November 3, 2022, prompting the two motions to dismiss. Cook responded to both, and the County Defendants replied. Hicks replied also, but she did so two months late and without leave of Court.[1] The Court has federal-question jurisdiction over the federal claims and supplemental jurisdiction over the state-law breach-of-contract claims.

II.     Standards

Hicks seeks dismissal under "Mississippi Rules of Civil Procedure 12(b)(1–7)." Def.'s Mem. [23] at 1. That was probably a typo, because the Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1. Also, Hicks never addresses most of the subparts she mentions. For example, she never argues that process was insufficient under Rule 12(b)(4) or that service of process was insufficient under Rule 12(b)(5). The Court construes her memorandum as asserting jurisdictional defenses under Rule 12(b)(1) and as claiming that Cook failed to state a claim under Rule 12(b)(6). The Court will apply the federal standards under these rules. The County Defendants also seek dismissal, but because they did so after answering, they cite Federal Rule of Civil Procedure 12(c).

---

[1] Though the Court did not consider the late reply, it reviewed it to see whether it would make a difference. It would not.

A. Rules 12(b)(6) and (c)

"[T]he standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). To avoid dismissal under Rule 12(b)(6), a plaintiff must have pleaded "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

For this inquiry, "court[s] accept 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Thus, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Ultimately, the standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

These rules prevent the Court from considering many of Hicks's arguments. As noted, under Rule 12(b)(6), the movant may not seek dismissal based on factual disputes with the

3

plaintiff's pleadings. *Martin K. Eby Constr. Co.*, 369 F.3d at 467. Yet that is what Hicks attempts when she offers justifications for her decisions based on facts that conflict with the Complaint. "This [c]ourt will not look beyond the face of the pleadings." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Tex. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991), *cert. denied*, 502 U.S. 1030 (1992)). And even if Hicks could show a factual dispute, that would be no basis for dismissal—or even summary judgment. The Court must therefore ignore the fact-based arguments in Hicks's memorandum.[2]

B.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject[-]matter jurisdiction when the [C]ourt lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "Lack of subject[-]matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

The Court will look to the sufficiency of the allegations in the complaint alone where "the defense merely files a Rule 12(b)(1) motion." *Paterson v. Weinberger*, 644 F.2d 521, 523

---

[2] Rule 12(d) would allow the Court to convert Hicks's Rule 12(b)(6) motion to a motion for summary judgment under Rule 56, but Hicks offers no record evidence to support the assertions in her legal brief. "[U]nsubstantiated assertions" and arguments from counsel are not competent record evidence under Rule 56. *Skinner v. Hinds County*, No. 3:10-CV-358-DPJ-FKB, 2012 WL 3913092, at *2 (S.D. Miss. Sept. 7, 2012) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).

(5th Cir. 1981). "If a defendant makes a 'factual attack' upon the [C]ourt's subject[-]matter jurisdiction[,] . . . submit[ting] affidavits, testimony, or other evidentiary materials," the "plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject[-]matter jurisdiction." *Id.* The Court faces the former inquiry because Hicks offers arguments with no supporting evidence.

III.   Hicks's Motion to Dismiss [23]

Cook asserts a state-law claim for breach of contract against Hicks. She also pursues federal claims against Hicks under Title VII, § 1981, and § 1983. These federal claims all allege that Hicks discriminated against Cook because of her race. As noted above, the Court may not consider Hicks's fact-based arguments for dismissal, but it will consider whether: (1) Cook's complaint fails to allege a viable breach-of-contract claim because Cook was an at-will employee; (2) all claims fall outside the waiver of immunity outlined in the Mississippi Tort Claims Act (MTCA); and (3) Cook has failed to state a prima facie case of racial discrimination.

A.   Breach-of-Contract Claim

Hicks invokes the at-will employment doctrine and argues that Cook failed "to plead or state any specific term or identify any tangible contract." Def.'s Mem. [23] at 4. "In Mississippi—when there is no written employment contract—the employment relationship is at-will, which means that 'an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible.'" *Galle v. Isle of Capri Casinos, Inc.*, 180 So. 3d 619, 622 (Miss. 2015) (quoting *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 986 (Miss. 2004)). In her Complaint, Cook never suggests that she had a written contract, and she concedes that her employment "may be

5

considered 'at will.'" Am. Compl. [21] ¶ 78. The Court therefore considers her breach-of-contract claim under that doctrine.

There are recognized exceptions to the at-will employment doctrine, but Cook never asserts one of those. She instead states in her Amended Complaint that she "reasonably . . . understood at the time of the agreement that [she] would not be subject to [discriminatory conduct]." *Id.*; *see also* Pl.'s Mem. [26] at 8 (making same argument). But the Mississippi Supreme Court has recently clarified that discrimination prohibited by federal law does not constitute an exception to the at-will doctrine. *Farm Bureau Life Ins. Co. v. Thomas*, 299 So. 3d 752, 758 (Miss. 2020).

Cook also asserts that mutual consideration existed and that promises were made. *Id.* Yet none of those things are reflected in a written agreement, and the Mississippi Supreme Court has held that implied contracts are

> contrary to our holdings concerning "employment at will." If this Court found that [Plaintiff] through the use of parol evidence could prove an "implied contract" and thereby seek damages for the breach of such contract, then employees could also get around the "employment at will" doctrine and sue their employers for breach of an "implied contract" for employment.

*HeartSouth, PLLC v. Boyd*, 865 So. 2d 1095, 1109 (Miss. 2003). As in *HeartSouth*, Cook would have "this Court hold [Hicks] subject to an 'implied contract' for which no terms exist." *Id.* at 1108. Because Cook has failed to allege any facts that can overcome her at-will employment status and constitute a viable breach-of-contract claim, that claim is dismissed.

B. The MTCA and Cook's Federal Claims

Hicks next focuses on the federal claims, arguing that "all claims must be considered within the MTCA limitations and immunities." Def.'s Mem. [23] at 6. Cook's federal claims against Hicks include (1) a Title VII claim for racial discrimination (Count I), (2) a § 1981 racial-

6

discrimination claim through § 1983 (Count II), (3) a § 1983 equal-protection claim (Count III), and (4) a § 1983 substantive-due-process claim (Count IV).

To begin, Hicks limits her arguments to the MTCA, so the Court will as well. According to her, the MTCA is the "exclusive civil remedy" for all claims against her, including the federal claims. *Id.* at 5.

> "The MTCA provides immunity for the alleged torts of governmental entities. Miss. Code Ann. § 11-46-3 (Rev. 2002). However, the MTCA waives that immunity, and the governmental entity is liable, for injuries caused by the entity or its employees while acting in the course and scope of their employment. Miss. Code Ann. § 11-46-5(1) (Rev. 2002)."

*Zumwalt v. Jones Cnty. Bd. of Sup'rs*, 19 So. 3d 672, 688 (Miss. 2009). "The MTCA provides the exclusive remedy for civil claims against governmental entities and employees." *Little v. Miss. Dep't of Transp.*, 129 So. 3d 132, 136 (Miss. 2013) (citing Miss. Code Ann. § 11-46-7).

Cook bases Counts II through IV of her Complaint on § 1983, which creates a cause of action against anyone who violates a plaintiff's rights under the laws of the United States while acting under color of state law.[3] Hicks says these claims "must be considered within the MTCA limitations and immunities." Def.'s Mem. [23] at 6. But she cites no cases applying the MTCA to a § 1983 claim, and the Mississippi Supreme Court has held that the MTCA "places § 1983 actions outside the purview of the Tort Claims Act." *McGehee v. DePoyster*, 708 So. 2d 77, 82 (Miss. 1998).

That leaves Title VII. As the Supreme Court noted in *Fitzpatrick v. Bitzer*, Title VII was amended in 1972 "to include within the definition of 'employee' those individuals 'subject to the

---

[3] Count II asserts a § 1981 claim "through" § 1983. Am. Compl. [21] at 10; *see Oden v. Oktibbeha County*, 246 F.3d 458, 462 (5th Cir. 2001) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989) (holding that public employee must "assert a cause of action . . . under § 1983 to remedy violations of civil rights under § 1981").

civil service laws of a State government, governmental agency or political subdivision.'" 427 U.S. 445, 449 n.2 (1976). The Court has also recognized that "States . . . may no more condition [a] federal right to recover . . . than bar that right altogether." *Felder v. Casey*, 487 U.S. 131, 144 (1988). That holding flows from the Supremacy Clause, and the Fourth Circuit applied it to Title VII in *King v. McMillan*:

> [State] law cannot override Title VII employer liability. The Supremacy Clause provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, "[u]nder the Supremacy Clause of the Federal Constitution," the "relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 . . . (1988) (internal quotations and citations omitted). . . . In sum, state law demarcations of particular offices cannot be used to cut off the (federal) Title VII rights of state and local employees.

594 F.3d 301, 309 (4th Cir. 2010). Hicks again cites no authority suggesting that the MTCA applies to Title VII. Absent that authority, the Court finds that the MTCA does not block Cook's Title VII or other federal claims.[4]

C.   Racial-Discrimination Claim

Finally, Hicks stresses that Cook "has not and cannot establish that she was treated less favorably because of her membership in a protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." Def.'s Mem. [23] at 10.

Cook asserted her race claim under § 1983 and Title VII. Those statutes are "parallel causes of action." *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 166

---

[4] Cook argued these same points in her response, *see* Pl.'s Resp. [26] at 9–12, but Hicks ignored them in her delinquent reply, *see* Def.'s Reply [36] at 4–7.

(5th Cir. 2007) (quoting *Cervantez v. Bexar Cnty. Civ. Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996)).  Thus, "the 'inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII.'"  *Id.* (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)).  To establish her race-discrimination claims under those statues, Cook must show that she

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group *or* was treated less favorably than other similarly situated employees outside the protected group.

*Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319–20 (5th Cir. 2014)) (emphasis added).

According to Hicks, "claiming that the opening left by Plaintiff's termination was filled by an[] African American is not sufficient" to plead a prima facie case.  Def.'s Mem. [23] at 10.  That's incorrect.  As Cook notes in her response, and as stated above, she can create an inference of discrimination by showing either less favorable treatment or replacement by someone outside her protected group.  Pl.'s Mem. [26] at 4; *see also Morris*, 827 F.3d at 400.  Cook identifies herself in her Complaint as a white woman, Am. Compl. [21] ¶ 15, and she says that after she was fired, she was replaced by a less-qualified Black employee, *id.* ¶ 22.  Cook also says Hicks demoted her and replaced her with Regina Price, a Black woman.  Am. Compl. [21] ¶ 18.  Cook has pleaded a plausible race-discrimination claim.

Finally, Hicks makes a slew of allegations about Cook's qualifications and job performance in her brief.  *See* Def.'s Mem. [23] at 1–4, 9–12.  For example, Hicks says that "at some point [Cook's] duties were reduced due to . . . performance issues."  *Id.* at 11.  But as stated above, at this stage, the Court "accept[s] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co.*, 369 F.3d at 467 (quoting *Jones*,

9

188 F.3d at 324).  And to the extent Hicks is trying to offer legitimate nondiscriminatory reasons for Cook's demotion and termination, that is part of the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  That framework is a "tool for assessing claims . . . at summary judgment," not at the motion-to-dismiss stage.  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).  Confined to the face of the well-pleaded Complaint, Cook has alleged viable race-discrimination claims.  Hicks's motion to dismiss is denied as to the federal claims.

In sum, Hicks's motion to dismiss is granted only as to the breach-of-contract claim.  As to it, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case."  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  But "[g]ranting leave to amend is not required . . . if the plaintiff has already pleaded h[er] 'best case.'"  *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).  Cook seems to acknowledge that she was an at-will employee.  Am. Compl. [21] ¶ 78.  She also filed an amended complaint after Hicks's initial motion to dismiss that failed to cure her pleading deficiencies.  Finally, Cook "gives no indication that [s]he did not plead h[er] best case in h[er initial] complaint" or amended complaint.  *Brewster*, 587 F.3d at 768.  And she "does not state any material facts [s]he would . . . include[] in [a third] amended complaint."  *Id.* (citing *Shope v. Tex. Dep't of Crim. Justice*, 283 F. App'x 225, 226 (5th Cir. 2008)).  Accordingly, the breach-of-contract claim is dismissed with prejudice.

IV.     Hinds County's Motion for Judgment on the Pleadings [28]

Cook concedes some of the County's arguments.  First, she concedes that the Hinds County Board of Supervisors must be dismissed as a defendant because it "is not a political

subdivision amenable to suit." Defs.' Mem. [29] at 3; *see also* Pl.'s Mem. [33] at 1 (conceding claim). Second, she agrees that she has failed to plead a breach-of-contract claim against the County. Pl.'s Mem. [33] at 1. Accordingly, the Court dismisses the Hinds County Board of Supervisors and Cook's breach-of-contract claim against Hinds County.

That leaves claims against Hinds County under Title VII, § 1981, and § 1983 (for equal protection and due process). As to each, the County says Cook cannot prevail because the County was not her employer. *See generally* Defs.' Mem. [29]. As for equal protection, the County also argues that no municipal liability exists under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Court considers those arguments in turn.

A.    Whether the County Was Cook's Employer

According to Hinds County, Cook must show that the County was her employer to prevail on her claims under Title VII, § 1981, and § 1983. It then says she cannot make that showing under the Fifth Circuit's hybrid economic-realities/common-law-control test. Under that test,

> [t]he most important component . . . is "[t]he right to control [the] employee's conduct." [*Deal v. State Farm Cnty. Mut. Ins. Co.*, 5 F.3d 117, 119 (5th Cir. 1993).] "When examining the control component, [the Fifth Circuit has] focused on whether the alleged employer has the right" to hire, fire, supervise, and set the work schedule of the employee. [*Id.*] "State law is relevant insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired." [*Calderon v. Martin County*, 639 F.2d 271, 273 (5th Cir. 1981).] The economic realities component of the test focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." [*Deal*, 5 F.3d at 119.]

*Muhammad v. Dallas Cnty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007) (footnotes omitted).

Hinds County concedes that it pays Cook's salary and benefits, Defs.' Mem. [29] at 6, but says that decision-making related to hiring, firing, and setting the terms of Cook's

11

employment rests with the county court judges (by majority vote) under Mississippi law, *id.* at 6–7 (citing Miss. Code Ann. § 9-17-1).  Essentially, Hinds County says it has no control over Cook and only pays the salary and benefits set by the judges.  In response, Cook says that the Court should focus on the economic-realities test rather than the common-law-control test due to "this unique fact pattern involving a Judge."  Pl.'s Mem. [33] at 6.

Cook offers slight analysis and no authority for that argument, but the issue seems more complicated than the County indicates.  For example, in *In re Appointment & Setting Salary for County Court Administrator & Deputy Court Administrator*, 275 So. 3d 87, 89 (Miss. 2019), Hinds County took the position that "county court administrators are purely county employees funded solely by the county."  *Hinds County v. Skinner*, 2018 WL 7890778, appellant brief at *12 (Miss.) (citing Miss. Code Ann. § 9-17-1).  Cook was Hinds County's court administrator when it made that argument.  The County supported its position by noting that under Mississippi Code section 9-9-3, "the county board of supervisors may establish the court," *id.*, and that "the county board of supervisors may abolish a county court if certain criteria are met," *id.* (citing Miss. Code Ann. § 9-9-37).

Aside from those arguments, the County's lack of authority to supervise county court administrators may mean the authority to do so was delegated to other final decisionmakers within the County—the county court judges.  And, as Hinds County notes, an employee can have multiple employers.  Defs.' Mem. [29] at 5 (citing *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 928 (5th Cir. 2021) ("The term 'joint employer' refers to two or more employers that are unrelated or that are not sufficiently related to qualify as an integrated enterprise, but that each exercise sufficient control of an individual to qualify as [his] employer.")).  So, the question is whether the County was at minimum a joint employer.

Applying the hybrid economic-realities/common-law-control test to these questions "is necessarily a fact-specific inquiry and is therefore typically applied in a summary judgment context, in which a court is permitted to go beyond the pleadings and examine the state law and the evidence relevant to the employment relationship." *Muhammad*, 479 F.3d at 382 (footnotes omitted) (citing *McClure v. Salvation Army*, 460 F.2d 553, 557 (5th Cir. 1972)). The County nevertheless says this matter is appropriate for dismissal, again citing *Perry*. But *Perry* decided the employer issue under Rule 56, which seems the safer approach in this case.

Though the statutes can be considered under Rule 12(b)(6), factual context and further briefing are both necessary. For now, Cook has asserted "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d at 587. Hinds County's motion is therefore denied without prejudice on this theory.[5]

B.  Whether Municipal Liability Exists for Equal-Protection Claim

Cook sues the County under § 1983, claiming that it violated her right to equal protection when it discriminated against her based on her race. The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Hinds County says that even if it employed Cook—which is denied—the claim fails to create municipal liability. Under *Monell*, "[a] plaintiff may not recover against a municipality

---

[5] If this issue resurfaces under Rule 56, the parties should also address this question. Some person or entity must be Cook's employer. Hinds County says "not me." But if the county court judges were her employer as the County suggests, then are they a legal entity that can be sued? And if not them, then who? Title VII expressly allows suit against someone.

via theories of respondeat superior—the municipality itself must be responsible for the constitutional violation." *Martinez v. Nueces County*, 71 F.4th 385, 389 (5th Cir. 2023). Thus, "[Hinds] County cannot be held liable under § 1983 unless 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Id.* (citing *Monell*, 436 U.S. at 694).

The County says Cook has not shown "an official policy, practice or custom of the County was the 'moving force' behind any constitutional violation." Defs.' Mem. [29] at 9. Cook agrees, so the Court need not consider the argument. Pl.'s Mem. [33] at 2. But the parties dispute whether Hicks was a final policymaker whose acts can bind the County.[6]

The Supreme Court has recognized that "a single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000)). Hinds County says Hicks cannot be a final policymaker because she is an elected official over whom the County "has no control." Defs.' Mem. [29] at 13.

The issue again seems more complicated than that. For starters, Hinds County has argued in other courts that county court judges are "elected county officials." *Hinds County*, 2018 WL 7890778 (Miss.), Appellant Brief at *8. And elected officials can be final decisionmakers. For example, in *Brady v. Fort Bend County*, the plaintiffs sued a newly elected sheriff for refusing to rehire them. 145 F.3d 691, 699 (5th Cir. 1998). The Fifth Circuit noted that the "appropriate inquiry is whether the sheriff is the County's final policymaker with respect to the specific action

---

[6] Hinds County limited its *Monell* argument to the equal-protection claim in its opening brief, *see generally* Defs.' Mem. [29], but it expanded the argument to the other § 1983 claims in its Reply, Defs.' Reply [37] at 6. Normally, the Court would not consider new arguments in a reply. *Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x. 307, 315 (5th Cir. 2008). But the analysis is the same for the other § 1983 claims.

14

at issue here" and then concluded that he was because state law gave sheriffs decision-making authority over hiring decisions. *Id.*

The Fifth Circuit considered a similar issue in *Familias Unidas v. Briscoe*, where a Texas county argued that a county judge was not a final policymaker because the county had no control over his acts. 619 F.2d 391 (5th Cir. 1980). The court observed:

> There are, to be sure, many actions of a county judge that may justifiably be considered to constitute or represent county "policy" under *Monell*. In addition to his judicial duties, a Texas county judge is charged by the state constitution and statutes with the performance of numerous executive, legislative and administrative chores in the day-to-day governance of the county. . . . Because of the unique structure of county government in Texas, the judge like other elected county officials, such as the sheriff and treasurer *holds virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute and is accountable to no one other than the voters* for his conduct therein. . . . Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the county may be held responsible under section 1983.

*Familias Unidas*, 619 F.2d at 404 (quoting *Monell*, 436 U.S. at 694) (emphasis added) (other citations omitted). The court concluded, however, that the judge was not a final policymaker because the disputed conduct revealed "no relationship to [the judge's] traditional role in the administration of county government." *Id.*

Here, the disputed employment decisions seem administrative, and the County argues that the county court judges have "absolute sway over" them. *Id.* At this point, the Court cannot say Cook failed to plausibly plead her claim. Factual development will provide necessary context for further briefing. *See Ward v. Morris*, 895 F. Supp. 116, 118 (N.D. Miss. 1995) (addressing similar issues under Rule 56).[7]

---

[7] To be clear, the Court has not made any final conclusions in this interlocutory order. There may be factual issues that distinguish the cited authority, and, at this point, the depth of these legal issues has not been explored.

V.      Conclusion

The Court has considered all arguments the parties raised; those not addressed would not have changed the result.  Defendant Hicks's Motion to Dismiss [23] is granted as to the breach-of-contract claim and denied in all other respects.  The breach-of-contract claim against Hicks is dismissed with prejudice.  Defendants Hinds County Board of Supervisors and Hinds County's Motion for Judgment on the Pleadings [28] is granted as to all claims against the Hinds County Board of Supervisors and as to the breach-of-contract claim against Hinds County and denied in other respects.  The Hinds County Board of Supervisors is dismissed as a party; all claims against it are dismissed with prejudice.  The breach-of-contract claim against Hinds County is dismissed with prejudice.  The parties are directed to contact United States Magistrate Judge F. Keith Ball to set the case for a case-management conference.

**SO ORDERED AND ADJUDGED** this the 21st day of August, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE